Today's case, as we previously announced, the first case today is number 23-1922 Clement Properties et al. v. Honorable Pedro R. Pierluisi-Urrutia et al. At this time, would counsel for the appellants, Clemente Properties, please introduce himself on the record to begin. Thank you, Your Honor. May it please the Court, when thought for appellants Roberto Clemente, Jr. et al., I'll be discussing the Takings Clause issues. My co-counsel, Ms. Padilla Rodriguez, will be discussing the Lanham Act, and I'd like to reserve one minute for rebuttal. Is that one minute for both of you? One minute for my rebuttal, Your Honor. Why don't you do two minutes? You split it up however you want. Okay. Thank you, Your Honor. For the last seven decades, Roberto Clemente and his family have preserved the Roberto Clemente trademark through hard work and humanitarian efforts. Against the Clemente's wishes, Puerto Rico appropriated that trademark, used it to generate $15 million in revenue, and refused to- Because there's so many issues, and you don't have that much time, and you're splitting your time, we know the facts quite well in the case. I think if you could just get right to the legal question. Sure, Your Honor. I think the central issue in this case is sovereign immunity, and our main contention is that sovereign immunity doesn't obviate the government's duty to provide just compensation when it takes private property. That duty arises from the text of the Fifth Amendment, which uniquely specifies the remedy of just compensation for a violation of the Takings Clause. That self-executing compensation remedy prevents governments from doing exactly what Puerto Rico did here. Well, why would it override the immunity? The Fourth Circuit, I think it's in the Zito decision, has a fairly comprehensive analysis of why that wouldn't mean that there's a right to a federal form in a case in which the defendant is a state party that otherwise couldn't be sued even for a constitutional violation in federal court. So why would it be any different? Your Honor, I think to put our argument precisely, it's not so much that it overrides immunity, it's more of what's commonly called a plan of the convention waiver, or what I call background principles. If you look at the government's- I guess I don't understand why the existence of the just compensation right is any different than the existence of the Fourth Amendment right, or any other constitutional thing which was agreed to in the plan of convention, but there was no agreement to be sued in federal court when the party was a state. Why is that any different for the Just Compensation Clause? Well, our argument is that there is an agreement to provide just compensation. Yes. And why was there an agreement that they get to be sued in federal court for that when the defendant is the state? Because you apply the principles from the right to the states through incorporation, so just as state officials are now routinely subject to injunctions under Ex Parte Young for violations of the First Amendment- They could be subject to an injunction for taking without just compensation if it wasn't with it. You could join the taking, couldn't you? You could, Your Honor, but you can also get just compensation, and that just compensation remedy- Sometimes you can get just compensation for other constitutional rights, but immunity still attaches to them. The difference, I think, between those rights is that the Fifth Amendment uniquely provides a self-executing remedy for just compensation. I guess I'm still just not understanding an answer to, that's true, why does that remedy have to be in federal court when there is a pre-existing understanding in the plan of convention that states could not be sued even for constitutional wrongs in federal court? Well, I think- The remedy could be had in state court. That's true for a due process remedy, for retroactive tax payments and like, what's the difference? I thought that was the thrust of the Zito decision by the Fourth Circuit. Right, and we disagree with the Zito decision, Your Honor, and I think the Zito decision not only clashes head-on with the tax purpose and structure, but also with the Supreme Court's recent decision in Nick. We agree that Nick dealt with a municipality rather than a state, but still, the reasoning of the Nick decision, I think- I thought Nick was saying there was a special rule that the court had adopted about rightness that had the effect of disfavoring the just compensation right, relative to all the rights. That wouldn't be true here, that it's not disfavoring this right compared to all other rights. All other rights also can't be brought in federal court when there's a wrong, neither can this one. What's the difference? I think the difference is that the ordinary remedy for a violation of the Takings Clause is just compensation, whereas the ordinary remedy for a violation of, say, the First Amendment right or Second Amendment right is injunctive relief. So I do think that this rule singles out the Takings Clause for disfavored treatment in the same way that the court was very concerned about in Nick. Nick noted that if a plaintiff were raising a free speech or a free exercise claim, he may have that federal claim vindicated in federal court, but the same is not true of the Takings analysis and what that did, in the words of the Supreme Court in Nick, was it relegated- When you're entitled to monetary retroactive relief under a different federal constitutional right, can you get a federal form if you're suing the state? When you're entitled to- When under the Constitution, you're entitled to a retrospective form of relief that involves the payment of money, can you get access to a federal form when the defendant is a state for any other constitutional right? No, I think sovereign immunity would apply in those instances. So why is it different here when what you're seeking is a retroactive payment for the money damages? How is it disfavoring this right? All other rights, insofar as they entitle you to a monetary damage, don't entitle you to a federal form if the defendant is a state, so it's equal treatment, not disfavored treatment to the Just Compensation Clause, isn't it? I think this is different because it's a self-executing right, and I think the government admits as much in their brief. I think the government kind of backs off the district court's analysis. The district court's analysis, I think, suggested that sovereign immunity would bar claims under any court, federal or state, but the government is saying that there should be some sort of state court-only theory for raising takings claims, but I think if the Clementes were raising, again, a free speech or a free exercise claim, they could get those claims vindicated because the ordinary remedy for a violation of those claims is injunctive relief, but the ordinary remedy for a takings clause violation is just compensation. So therefore, I think applying that principle, we should have that, we should be entitled to that remedy as well. In my remaining minute, I'd like to just... Excuse me. I mean, it's a secondary issue, but why is there even a takings here in light of the allegations? Clearly, we don't have a physical invasion of property, and we don't even have the deprivation of all beneficial use of the property, which would seem to be the requirements of a taking. I don't see either one of those here. So why do we even have a taking, putting aside the critical sovereign immunity issue? Why do we even have a taking? We have alleged cognizable takings claim, Your Honor, because this is an appropriation of the property that destroys our client's right to exclude. So if you look to Supreme Court cases like Horn, Loretto, and Cedar Point, in all those cases, the property owner still retained value of his property, and there was, may I briefly And I think that analysis applies with even more force here. After all, a trademark simply isn't a trademark if one does not possess the right to exclude others from using it. Thank you. Before you sit in, could you address the sovereign immunity issues as to the Lanham Act question? My co-counsel will be addressing that issue. I see. You're only addressing sovereign immunity as to the taking. Correct, Your Honor. Thank you. Thank you, counsel. At this time, would the other counsel for the appellants please introduce yourself on behalf of the appellants? I would like to reserve one minute for rebuttal, thank you. Okay, so let's get into the jurisdictional question, or the immunity question. I'm sorry, counsel, could you possibly speak up a little bit and hold that up a little bit?  Thank you. So the Lanham Act contains a clear statement of abrogation of immunity regarding the federal government and the territories of the United States. That abrogation of immunity is valid when it comes to Puerto Rico, because Puerto Rico doesn't have sovereign immunity or sovereignty apart from the federal government immunity or sovereignty. We have three legal developments in recent years that show that. PROMESA, which is a law that takes away from the government of Puerto Rico all economic decisions. The economic decisions are controlled by a board that are appointed by the government of the United States, not elected officials. Are you trying to say that they have no immunity even in the absence of Congress taking steps to pierce that immunity, or are you saying they have no immunity when Congress does try and pierce it? Do you understand the distinction?  Which one are you saying? I'm saying that Puerto Rico doesn't have sovereign immunity to oppose to Congress when the Congress makes an excuse. Okay, but we could presume it has it in the absence of Congress trying to get rid of it. Are you saying no? I don't, I think for this case it's immaterial because we haven't pierced it. Okay, so we assume that they have it generally, and then when Congress tries to pierce it, you're saying if they pierce it, there's no constitutional basis for resisting that congressional effort. Exactly. Because, well, Sanchez Valle said that the sovereignty of Puerto Rico comes from the United States. The Valle-Madero case just said that Congress has total power to legislate regarding territories as Puerto Rico in a different way from states, and also the clear statement of obligation of immunity regarding the U.S. government and the territories has already been in place. The United States has been sued under the Lanham Act, and there's no question that the U.S. government can be sued under the Lanham Act. Also... Even if that's so, I thought under the Fair Labor Standards Act, we had held that because Congress could not pierce the immunity of states, it made sense to construe the statute that purported to abrogate Puerto Rico's immunity as not abrogating it. Yeah, we know that this Court, that is the doctrine that this Court has held, but really based on the Sanchez Valle case... Why would Sanchez Valle... The idea there wasn't anything about whether the Constitution prohibited Congress from abrogating Puerto Rico's immunity. The idea was because Congress couldn't abrogate a state's immunity, and because we assumed Congress wanted to treat Puerto Rico no differently than states with respect to immunity, if Congress couldn't pierce the immunity of a state, we should construe the statute not to abrogate the immunity of Puerto Rico. That doesn't have anything to do with whether, in fact, Puerto Rico has a constitutional immunity that Congress can't pierce, it's just a matter of interpreting the statute. Well, regarding the Lanham Act, this is a very particular law because in this case, Congress did try to pierce states' immunity also. That's true in the Fair Labor Standards Act case as well. Yes. Yes, and they were trying to... The Florida cases, Judge Scalia said that the Congress was not able to pierce immunity of the states because the publicity issue was not one that was under the 14th Amendment, but that same case says that when we were talking about the improper use of a trademark, that will fall into a 14th Amendment, and it would be valid to pierce immunity. So you're saying that this act, even as to states, would pierce their immunity? Well, I think that's what the Florida cases state. There's more to the analysis that I didn't see in your brief about how there would be enough of a predicate and that in light of the violations and history of violations, it would be permissible to view Congress as having the authority to have pierced that immunity pursuant to its Section 5 power. I didn't see that fully developed in your brief. Well, yeah, it was more developed in the district court because the brief was more directed to the court decision, but yes, that is one thing. Putting that aside for just a moment, assuming Congress would not have a basis under Section 5 of the 14th Amendment to abrogate the immunity of a state, what do we do about our line of cases suggesting when Congress tries to abrogate the immunity of states and Puerto Rico, but is constitutionally prohibited from abrogating the immunity of states, we should construe the abrogation provision not to abrogate the immunity of Puerto Rico so as to ensure equal treatment of the states in Puerto Rico? Again, that, because that goes to the main issue about equality between Puerto Rico and the states and I think that later developments, PROMESA, Sanchez Valle, Valle Romadero, the CPI case, they are, the Supreme Court is moving in another direction. They are saying over and over again that Puerto Rico doesn't have sovereignty, that Puerto Rico is being treated differently from the states. I'm just asking why should we assume Congress, is that why we should therefore assume Congress now intends to abrogate the immunity of Puerto Rico even when it can't do it as the states? Well, in the case of the Lanham Act, it is because you have a clause regarding the abrogation of states' immunity and you have another separate clause regarding the United States and its territories. That was true in the Fair Labor Standards Act case also. Yeah, but again, I think that right now the Supreme Court is saying to... And how does that bear on how we should understand what Congress was intending when it passed the Lanham Act? Sanchez Valle hadn't been decided when they passed the Lanham Act, neither PROMESA wasn't on the books when they passed the Lanham Act, so we're trying to figure out did Congress intend to abrogate for Puerto Rico what it could not abrogate for the states? In the Fair Labor Standards Act, we said no. Why should we say yes for the Lanham Act? In the Lanham Act, the Congress' intent to abrogate immunity is clear. They intend to... It's just as clear as it was in the Fair Labor Standards Act. But they intended to abrogate immunity regarding the states in a separate way regarding the United States and the territories. The decision was made by the courts to say that the states' immunity could not be abrogated. But I think that the Supreme Court's recent developments, recent decisions, do not support to conclude that Congress doesn't have the power to treat Puerto Rico differently regarding abrogation of immunity. Because they have said that Congress, under the territorial clause, can't treat Puerto Rico differently in basically any way they want, even when we're talking about equal protection. Okay, thank you. Do I still have time? Your time is up. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellee please come to the podium and introduce herself on the record to begin? May it please the Court, my name is Mariela Abreu, Counsel for Government Appellees. This case presents important questions of constitutional structure and statutory interpretation, but its resolution is straightforward. Puerto Rico, like any state, is protected by sovereign immunity. The District Court properly dismisses placing claims because they seek to do exactly what the 11th Amendment forbids, sue the Commonwealth and its officers in the absence of a valid waiver or congressional abrogation. But there was an abrogation. There was an abrogation here. The statute specifically says that you can sue the state, and it specifically says you can sue the territories. Yeah, but that's what I said, not a valid congressional abrogation. And the reason it's invalid as the state's is because it would be unconstitutional to abrogate the immunity. Well, I guess based on the... Not what Seminole Tribe held? In the College Savings Bank case, which is about the trademark... That's your position, right, or not? I'm sorry? Is your position that it would be unconstitutional to abrogate it as to the state? Yes. Yes. But it wouldn't be unconstitutional to abrogate it as to Puerto Rico, would it? If we were returning Puerto Rico like a state under the Lanham Act, the same rationale would apply.  But now you're talking about the Lanham Act. I'm asking about the Constitution. If the Lanham Act says Puerto Rico's immunity is abrogated, is there anything in the Constitution that prohibits that? No. Okay. So your position must be the Lanham Act does not abrogate, purport to abrogate Puerto Rico's  But it says in it that it is trying to abrogate Puerto Rico's immunity by mentioning territories specifically, doesn't it? Well, in the section that refers to the abrogation of the federal government, it doesn't mention territories at all. But I thought when it references states, does it not? In the section that it tends to abrogate the state's immunity, it also doesn't mention territories specifically, but I think that Puerto Rico would be treated the same as a state for purposes of those sections. The section that would apply to Puerto Rico is the one regarding the states. Okay. So then, given that they were trying to abrogate the sovereign immunity of Puerto Rico, just like they were trying to abrogate it as to the states, what prevents Congress from doing that? It's not that something prevents Congress from doing that, it's that in the way that they try to do it, it doesn't comply with the Supreme Court, the Supreme Court case law of the exact conditions under which Congress can abrogate states' sovereign immunity under Section 5 of the Forcing Amendment. But those conditions are constitutional restrictions that don't apply to protect Puerto Rico. But in this, I feel like in the Langham Act, I don't feel like, in the Langham Act, they treat Puerto Rico as a state. They don't treat it as part of the federal government. Are you saying that, I guess I'm just having to understand it conceptually. There's two pieces. There's what did Congress intend to do with respect to abrogation, and then there's could they constitutionally do it. We asked the first question, did they intend to abrogate the immunity for states and Puerto Rico? Yes.  Could they constitutionally as to states? No, you say. Could they as to Puerto Rico? Yes. So normally, we would just, why wouldn't we just say, well then, the statute survives as to Puerto Rico, because that's what they intended to do. What's wrong with that? I'm not saying, I didn't say that they couldn't do it for the states. I just said that in the way when that section was enacted, they didn't follow what the Supreme Court has laid out. Which renders that part of the statute unconstitutional.  But the part that applies to Puerto Rico is not unconstitutional. I think it does extend to Puerto Rico that the section about abrogation of the state sovereign immunity. Counsel, may I ask you a question about the history of the case? I should know this, but I don't. Are there, were there state law claims brought in as a supplement to the federal claims that we're talking about? There were state law claims brought as supplemental claims. The district court didn't address them after finding that none of the federal law claims were proceeded. So those claims are still out there, is that correct? They're still out there and they were dismissed without prejudice. Okay. Okay, well I ask that in part because I, putting aside all these really critical legal issues, which of course we have to address, there is something in sort of a common sense way sort of unattractive about the position that the Commonwealth is taking because you have the registered trademark, the name, Roberto Clemente. You have a family that cares about the legacy of Roberto Clemente. They have tried to protect it for their own business interest, if you will. Along comes the Commonwealth and perhaps for good public purpose reasons, nevertheless, on its own initiative, they use the name Roberto Clemente to raise funds for this sports district. They allege that a lot of people in Puerto Rico felt that this money was being raised for the benefit of the Clemente family. That tarnished their reputation. That makes, again, common sense. That makes a lot of sense. So it is troublesome to think that they might not have any redress for what seems to be an unfair use of that name, Roberto Clemente. I gather you're telling me that there may be, I'm not asking you for any definitive judgment, of course, but there may be recourse under the law of Puerto Rico. Whatever the outcome here of the federal claim, there may be recourse under the law of Puerto Rico for what seems to be a pretty unfair situation. There is recourse under the law of Puerto Rico for both the taking claims and the alleged trademark infringement claims, which plaintiffs could bring in state court. And that... Please, go ahead. Just to clarify, I understand what you're saying about Puerto Rico's use of the mark, but I think the government's position here, which is aligned with the district court decision, is that the government's use of the mark here is not commercial use within the scope of the Langham Act. So it doesn't trigger Langham Act liability. I would like to hear from opposing counsel, when they get up, what recourse might be available under the law of Puerto Rico and what the status of that litigation is. I'd appreciate knowing that. Please, please, go ahead. Well, Puerto Rico courts are open to hearing, first of all, taking claims brought either under the federal constitution or the Puerto Rico constitution. So for taking claims, there's no problem bringing that claim in state court. And Puerto Rico has the federal equivalent of the trademark law, which basically mirrors the Langham Act. For trademark purposes, federal jurisdiction is not exclusive. It's actually concurrently, so Puerto Rico could address claims under the Langham Act. And if I may, just to respond to counsel's first point about potential abrogation for taking claims, the government's position is that there's no exception for, there's not a specific sovereignty for taking claims. The fact that the taking clause is self-executing in the sense that it creates a constitutional obligation to pay compensation, self-executing doesn't mean it's self-enforcing in federal court against a sovereign without its consent. And all of the federal courts that have addressed the issue in some way all have ruled that it's not an exception to sovereign immunity. So there's no reason for this court to depart from the majority of the courts that have addressed this issue. But it is an unusual provision in the sense that built right into it is a remedy for the payment, which you're saying simply can never be vindicated in federal court. Other rights just don't have that feature in which they're sort of right up front remedy. I do understand that, but the fact that it's self-enforcing because it provides a remedy, it's not the same as saying that it's self... I understand that point, but I thought the court in construing the rightness issue for the takings clause was concerned about a construction of the takings clause that would have the consequence of rendering it less a full right than other rights. And one of the consequences of the prior construction of the rightness issue there was that effectively you never had a federal court remedy. Well, I think the Nix case, it only addressed the state litigation requirement for rightness purposes. It doesn't have anything to say about overriding sovereign immunity. But the rationale of it was a concern about not rendering the takings clause a lesser right than other constitutional rights. And the concern was that if you construed the taking clause in a way that resulted in you not having a federal forum for it, it would render it unequal relative to other rights. And for that reason, it concluded the rightness analysis had to be mistaken. So why wouldn't we say, just by parallelism, if we construed sovereign immunity to render the takings clause the main signal way in which you get vindication for it, unavailable except in a state forum, wouldn't that render it unequal to other rights because those rights are vindicated in the main way they get vindicated in either forum? Well, I know the Supreme Court voice it had concerns regarding that state courts basically have the power to hear taking claims clause. But actually, recently the Supreme Court in the Deliver versus Texas case the question before the court was whether there was an implied cause of action implied cause of action from the Fifth Amendment for taking clause and the court didn't answer that question relying on the fact that there was recourse for the taking clause under Texas law. So that case being resolved almost four years after the Nick case I think it negates or diminishes the argument that the concern that the court had in Nick means that there should be an exception to sovereign immunity for taking clause claims. The only question I had is that it's not clear to me that if we were to find that Puerto Rico's sovereign immunity has been abrogated, I don't understand your argument as to why what happened here would not be commercial activity as far as Puerto Rico selling certificates with the mark as well as the license plates. What makes that commercial activity? Well, I think the issuance of the license plates and the tax it's regular commercial activity and the fact that there's revenue involved it doesn't change the nature of the use from non-commercial to commercial use. And is that because it's not a sale of the license plate, it's a mandate to purchase? How does it operate? Was it a voluntary sale or was it a requirement that you get a license plate with this mark and then pay that amount? It was a requirement. So is that the idea that it wasn't an ordinary commercial transaction it was a regulatory act mandating registration effectively? Yes, and I think it's it was more akin to government speech to government speech and not commercial speech and that's why the district court relied on the Walker case to make the distinction that in the Walker case the Supreme Court ruled that the special license plates there were commercial speech and not government speech and non-commercial speech and doing that analogy for the Langham Act means that it doesn't amount to commercial use to bring it within the purview of the liability of the Langham Act. Anything further? If there are no further questions the government is on its feet. Thank you. At this time would counsel for the appellant who's going to speak first introduce themselves on the record to begin you have one minute or above them. Counsel, just very quickly before you start you would agree I gather that you could have avoided all these very, very difficult sovereign immunity issues, 11th Amendment immunity issues and so forth. If you could pursue these claims in state court along with claims available under Puerto Rico law, so why did you why didn't you do that? Well because we believe that the federal forum is the best place to vindicate our constitutional rights and that's a choice that federal civil rights plaintiffs routinely make in federal cases not just with respect to the takings clause but also free speech rights and free exercise rights and in many of those cases there are also parallel state law provisions. Many states have a state law equivalence to the free speech clause or the free exercise clause but as the Supreme Court said in Nick the existence of a federal right, the existence of a state right rather does not deprive an individual from bringing his or her claims under the federal constitution as well. So if you were able to go forward if you were able to go forward you would assume that you would only get a jury trial on these claims whereas a jury is not available in the commonwealth courts, right? I'm not sure about that as a factual matter but I think there are all sorts of reasons that plaintiffs federal civil rights plaintiffs choose to file in federal court and that's what we chose to do in this case and that's what federal plaintiffs and other constitutional rights do. You can use, you still have your minute. Thank you your honor I just wanted to make two quick points on rebuttal. One, there seems to be radical agreement that there must be some forum for vindicating our right to just compensation under the fifth amendment whether that stems from the structure of the constitution or whether that stems from the self-executing nature of the takings clause as the Supreme Court recognized in First English. The political process itself is insufficient. I mean Roberto Clemente is one of the most famous baseball players of all time. If the government can do this to his family it can do this to anybody and that's why the framers that's why the framers created a mandate rather than an invitation to compensation. My second brief point is that the points that I think Chief Judge Barron's questions kind of went to about whether compensation is unique. I think if you look at the third circuit's decision in Nick and also Justice Kagan's dissent they justified I think the state court litigation procedure on the compensation aspects of the fifth amendment and yet the Supreme Court still held that a federal forum must be available to property owners. Thank you Just to be clear on that one point. It is the case in Nick that the effect would be that the federal forum would be never available at all if Nick were right because of the preclusion issues that would result. This would only be true as to the category of claims that are brought against state defendants in consequence of the immunity that states uniquely have. Correct? Yes, I think here claims against state governments would never be allowed to be brought. I'm saying Nick was dealing with a more sweeping way in which you would never be able to bring a claim because it would apply to any claim. The estoppel issues would arise as to all claims. So the federal forum would effectively never be available in any claim. Correct, Your Honor. Nick dealt with a broader range of takings cases but here too takings claims against the state under the government's theory would never be advocated in federal court and we don't think that's a correct application of the Fifth Amendment. Thank you. Thank you, Counsel. At this time would Attorney Padilla please reintroduce herself on the record if you can. Attorney Tanaya Padilla Rodriguez on behalf of the Appellants. One quick point. Section 117 of the Lanham Act expressly says that the intent of the chapter is, and I quote, to protect registered trademarks used in such commerce from interference by state or territorial legislation. So that is also, I wanted to say that there's also a lawsuit against individual defendants, officers of the state. So the immunity of Puerto Rico issue is not dispositive. Regarding the government speech case that was used by the attorney says that license plates is a forum in which the government expresses speech. That has nothing to do with using a private claim. But this was a part and parcel of a regulatory requirement. It was not a commercial transaction, right? Typical sale wasn't a voluntary exchange. The people who got the license plate had to do it as a condition of registering their vehicle, correct? Yes, but that was, yes, in the final regulation it was. But there is an important thing. There was a charge for the permit. Yeah, that's the fee. But typically when I charge something in exchange, it's because I choose to buy it and that's the price. This one, in order to register my car, I had to get this and then pay that fee. Yes, but So why doesn't that make it not a typical commercial exchange and instead make it regulatory or governmental and therefore outside the context of the Lanham Act? No, because in commerce, when we're talking about infringement, the in commerce expression doesn't mean a typical commercial transaction. Like recently in the case of the United States, Abitron, they explained that that in commerce expression that is used in the infringement clauses, what it means is that the regulation is made under the power of Congress to regulate commerce. But the interpretation is not that for a person to infringe a trademark right, they have to be making a typical commercial transaction. Actually, you have cases of the federal government, the DOJ, for example, was sued for using the name of a software Can I just ask you, is this in commerce, the requirement to get a license plate? When a state DMV requires you to get a license plate, does that trigger is that something that involves interstate commerce or commerce at all? When the power of Congress to regulate commerce is very broad, and it's basically anything that affects commerce. The Congress can regulate anything that affects commerce. If the state is able to use a private trademark in the way they want, and I also want to focus your attention I see the point. So they are tarnishing the mark, they are using it for purposes that it wasn't intended for, and they are also planning to use it to make a sports district using the trademark in its name. And we're seeking injunctive relief because of that. And that is not a governmental activity at all. And the sports district is one of the classifications in which the trademark is specifically registered on. Thank you. Thank you, counsel. That concludes argument in this case.